UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNDRAY KNIGHTEN,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>DR. NANCY MARTHAKIS and WARDEN,<br><br>　　　　Defendants. | CAUSE NO. 3:21-CV-64-JD |

OPINION AND ORDER

Undray Knighten, a prisoner without a lawyer, is proceeding in this case on two claims. ECF 5. First, he is proceeding "against the Indiana State Prison Warden in an official capacity to obtain permanent injunctive relief for constitutionally adequate medical care for his chronic diarrhea and foot warts as required by the Eighth Amendment[.]" *Id.* at 5. Second, he is proceeding "against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for decreasing or discontinuing the medications treating his chronic diarrhea in violation of the Eighth Amendment[.]" *Id.* Warden Neal and Dr. Marthakis filed motions for summary judgment. ECF 63, 85. Knighten filed responses to both summary judgment motions, and both defendants filed replies. ECF 72, 74, 97, 98. The summary judgment motions are now fully briefed and ripe for ruling.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy

both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

    *a. Dr. Marthakis*

Knighten is proceeding against Dr. Marthakis for violating his Eighth Amendment rights by "decreasing or discontinuing the medications treating his chronic diarrhea[.]" ECF 5 at 5. The parties provide evidence showing the following.

In 2007, Mr. Knighten underwent treatment for anorectal carcinoma while at a different Indiana Department of Correction facility. ECF 94-1 at 1-2. His rectum and part of his colon was removed. *Id.* at 52. Knighten was transferred to Indiana State Prison ("ISP") on August 14, 2019. ECF 86-2 at 1; ECF 86-4 at 41-46. Upon his arrival, he had a number of current medications, including Loperamide. ECF 86-2 at 1; ECF 86-4 at 38-46. Loperamide, also known and referred to in the record as Imodium, is a medication to treat symptoms of persistent diarrhea by slowing down the movement of bowel through the intestine. ECF 86-2 at 2. At ISP, Knighten was scheduled to receive Loperamide two times per day. ECF 86-2 at 1; ECF 86-4 at 42. According to Knighten, he received Loperamide three times per day at his previous prison facility, but Dr. Marthakis lowered his dosage once he arrived at ISP. ECF 97 at 4-5.

Dr. Marthakis first saw Knighten on August 27, 2019. ECF 86-2 at 2; ECF 86-4 at 34-37. During this visit, Knighten requested that he receive Loperamide three times per day. *Id.* Dr. Marthakis assessed Knighten and noted he had been diagnosed with irritable bowel syndrome due to a long history of abdominal complaints and surgeries, but informed him Loperamide would have to be dispensed during med-line which was run only two times per day at ISP. *Id.* Because Knighten indicated he would like some medication around lunch time, Dr. Marthakis ordered he receive Pepto Bismol he could

3

take before lunch. *Id.* Dr. Marthakis also continued an order for adult diapers and various other medications, including a probiotic. *Id.* Knighten continued to have an active prescription for Loperamide. *Id.*

On December 17, 2019, Dr. Marthakis saw Knighten for a chronic care visit. ECF 86-2 at 2-3; ECF 86-4 at 30-33. They discussed Knighten's abdominal and intestinal complaints, but no significant concerns were noted at that time. *Id.* Dr. Marthakis continued Knighten's Loperamide prescription. *Id.*

On June 2, 2020, Knighten had another chronic care visit, this time with Nurse Diane Thews. ECF 86-2 at 3; ECF 86-4 at 26-29. There was no evidence of any significant abnormality or problem. *Id.*

On August 25, 2020, Dr. Marthakis saw Knighten for another chronic care visit. ECF 86-2 at 3; ECF 86-4 at 18-21. Dr. Marthakis noted Knighten had lost 30 pounds in the last 6 months, and concluded further imaging of his abdomen was necessary. *Id.* As such, Dr. Marthakis submitted an off-site patient request for Knighten to receive a CT scan of his abdomen and pelvis. *Id.* She continued his Loperamide prescription. *Id.*

On September 16, 2020, Knighten received a CT scan of his abdomen which returned normal for no acute abnormality or mass but noted "rather extensive fecal stasis."[1] ECF 86-2 at 3-4; ECF 86-4 at 13. Dr. Marthakis assessed the CT scan results and concluded Knighten had chronic constipation, as there was no evidence of any bowel obstruction. *Id.*

---

[1] A large area of fecal matter inside the intestinal tract that appears to have been present for quite some time. ECF 86-2 at 3-4.

4

On September 24, 2020, Dr. Marthakis met with Knighten to discuss the CT scan results. ECF 86-2 at 4; ECF 86-4 at 9-12. She informed him the CT scan did not reveal any masses or tumors that may be consistent with malignant disease, but were consistent with constipation. *Id.* Dr. Marthakis continued his order for Loperamide but did not believe it was appropriate to increase the order due to the notation of chronic stasis on the CT scan, as an increase in Loperamide would further slow his bowels. ECF 86-2 at 4, 7. Dr. Marthakis also ordered iron supplements and a probiotic to address any ongoing gastrointestinal abnormality. *Id.* at 4.

On November 19, 2020, Knighten had a chronic care visit with Nurse Thews and his medications were continued. ECF 86-2 at 4; ECF 86-4 at 5-8.

On January 5, 2021, Dr. Marthakis saw Knighten for a visit regarding his medications. ECF 86-2 at 4; ECF 86-4 at 1-4. Knighten requested his Loperamide be increased, but Dr. Marthakis did not believe that was appropriate due to the finding of fecal stasis on the CT scan. *Id.* Instead, Dr. Marthakis ordered regular weight checks to monitor Knighten's weight loss, as his weight had dropped to 134 pounds. *Id.* At that point, Knighten began refusing to appear in the healthcare unit for weight checks, asserting he was going to refuse further care until he received Loperamide three times per day. ECF 86-2 at 5; ECF 86-4 at 68-69.

On February 5, 2021, Knighten was brought to the medical unit for observation and a weight check. ECF 86-2 at 5; ECF 86-4 at 64-67. At that time, he showed a slight increase in his weight, from 132 pounds to 140 pounds. *Id.* A nurse monitored any bowel movements, and noted no bowel movements over a six-to-seven-hour period. *Id.*

5

Dr. Marthakis was looking specifically for confirmation of repeated or uncontrollable diarrhea, but none was observed. *Id.* A rectal examination was recommended, but Knighten refused. *Id.* Knighten continued to receive Loperamide twice per day. *Id.*

On February 17, 2021, Dr. Marthakis saw Knighten for a chronic care visit. ECF 86-2 at 5; ECF 86-4 at 60-63. Dr. Marthakis again recommended weight checks, but Knighten had been refusing them. *Id.* He also refused another rectal examination. *Id.* There was no noted change in his condition, and his medications were continued. *Id.*

On April 14, 2021, Dr. Marthakis submitted a request for Knighten to receive a colonoscopy. ECF 86-2 at 5-6; ECF 86-4 at 57-59. Knighten thereafter received a colonoscopy that returned normal, along with a biopsy that returned normal. ECF 86-2 at 6; ECF 86-4 at 51-56. The colonoscopy was performed by Dr. Zohair Ahmed, who recommended that Knighten start Loperamide three times per day. *Id.*; ECF 86-4 at 56. Upon Knight's return to ISP, Dr. Marthakis did not order Loperamide to be provided three times per day, as there was no indication from Dr. Ahmed's medical records that he was aware of the prior CT scan results indicating Knighten had fecal stasis. ECF 86-2 at 6. The presence of fecal stasis contraindicates an increase in Loperamide, as Loperamide causes constipation and would increase the amount of fecal stasis. *Id.* at 7.

On August 19, 2021, Dr. Marthakis saw Knighten for another chronic care visit. ECF 86-2 at 6; ECF 86-4 at 47-50. Dr. Marthakis noted Knighten was now gaining weight and was stable on his treatment regimen. *Id.* His weight had increased to 190 pounds. *Id.* She continued his numerous medications, including twice-per-day Loperamide. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.

Dr. Marthakis argues she did not violate Knighten's Eighth Amendment rights because her decision not to increase his Loperamide dosage was based on her professional judgment. ECF 86 at 14-19. Specifically, Dr. Marthakis attests that, because Knighten's CT scan showed signs of slower bowels with retained bowel, increasing his Loperamide dose would have presented a risk to his health by further slowing his bowels and increasing the amount of fecal stasis. ECF 86-2 at 7. Dr. Marthakis attests her reasoning was further supported by observations of Knighten in the infirmary, which showed no indication of recurrent and uncontrollable bowel movements, and by Knighten's unwillingness to participate in other modalities of their treatment, including regular weight checks and examinations. *Id.*

In his response, Knighten first argues that Dr. Marthakis' initial decision upon his transfer to change his Loperamide from three time a day to two times a day was not based on medical judgment. ECF 97 at 2. However, Dr. Marthakis explained that the medication lines ran only twice a day. ECF 86-2 at 2. Administrative convenience is a permissible factor to consider when making treatment decisions. *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). Dr. Marthakis examined Knighten within two weeks of his arrival and determined that his now-discontinued lunchtime dose of Loperamide could be replaced by Pepto Bismol. ECF 86-2 at 2. Knighten provides no evidence that this decision was not based on her professional judgment.

Knighten further argues Dr. Marthakis' refusal to increase his Loperamide dosage after he began losing weight violated his Eighth Amendment rights because the decision was not based on her professional judgment. ECF 97 at 4-5. However, Knighten does not

7

refute Dr. Marthakis' explanation that increasing his Loperamide dosage was contraindicated by the presence of fecal stasis in his CT scan. Instead, Knighten makes various allegations about Dr. Marthakis' demeanor at various appointments, including that she seemed angry with him at times and placed medical holds that required him to stay in isolated holding cells rather than return to his cellhouse. ECF 97 at 6-14; ECF 94-1 at 6-11. But these allegations do not show that Dr. Marthakis' decision not to increase Knighten's Loperamide dosage was not based on her professional judgment. Moreover, the record shows that Knighten's condition eventually stabilized and his weight increased without an increase to his Loperamide dosage. Thus, Dr. Marthakis has provided undisputed evidence that her decisions about Knighten's Loperamide dosage were an exercise of her professional judgment, and Knighten provides no evidence by which a reasonable jury could conclude this decision was "so plainly inappropriate as to permit the inference that [she] intentionally or recklessly disregarded his needs." *See Hayes*, 546 F.3d at 524. Accordingly, summary judgment is warranted in favor of Dr. Marthakis.

  b. *Warden Neal*

Knighten is proceeding against Warden Neal "to obtain permanent injunctive relief for constitutionally adequate medical care for his chronic diarrhea and foot warts as required by the Eighth Amendment[.]" ECF 5 at 5. In his motion for summary judgment, Warden Neal argues he is not subject "to any liability" because he reasonably deferred to the treatment decisions of Dr. Marthakis and Knighten is not entitled to

dictate his own treatment. ECF 64 at 4-5; ECF 74.[2] However, the question is not whether Warden Neal is subject to any liability for deliberate indifference, but whether Knighten is currently entitled to injunctive relief for constitutionally adequate medical care for his chronic diarrhea and foot warts. The record contains evidence only that Knighten received constitutionally adequate medical treatment between 2020 and 2021, and contains no evidence regarding what treatment Knighten is currently receiving. Thus, because the record contains no evidence regarding what treatment Knighten is currently receiving for his chronic diarrhea and foot warts, the court cannot determine whether Knighten is entitled to injunctive relief. In the interest of judicial economy, the court DENIES Warden Neal's summary judgment motion with leave to file a new summary judgment motion.

For these reasons, the court:

(1) GRANTS Dr. Marthakis' motion for summary judgment (ECF 85);

(2) DENIES Warden Neal's motion for summary judgment (ECF 63) with leave to refile a new summary judgment motion on or before March 15, 2023;

(3) DISMISSES Dr. Marthakis from this action; and

(4) REMINDS the parties this case is now proceeding only on Knighten's remaining claim against Warden Neal in an official capacity to obtain permanent injunctive relief for constitutionally adequate medical care for his chronic diarrhea and foot warts as required by the Eighth Amendment.

---

[2] Warden Neal also argues he is entitled to qualified immunity on this claim, but "[q]ualified immunity does not apply to a claim for injunctive relief[.]" *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019).

SO ORDERED on February 9, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT